# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-50V
(not to be published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | |
| DEANDREA AUSTIN, * | |
| *Next friend of D.F., a minor*, * | |
| * | Chief Special Master Corcoran |
| Petitioner, * | |
| * | |
| v. * | Filed: October 6, 2021 |
| * | |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | |

*Scott William Rooney,* Nemes, Rooney P.C., Farmington Hills, MI, Petitioner.

*Heather Lynn Pearlman,* U.S. Dep't of Justice, Washington, DC, Respondent.

**DECISION GRANTING ATTORNEY'S FEES AND COSTS**[1]

On January 15, 2020, Deandre Austin filed a petition on behalf of D.F., her minor son, seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that D.F. had experienced vaccine-induced hearing loss after the administration of the measles, mumps, rubella vaccine on January 27, 2017. Petition (ECF No. 1) at 1-2. Less than eight months after filing, however, Petitioner moved for dismissal of the claim

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, it must be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

on August 31, 2020 (ECF No. 30), and a decision granting the motion was entered on September 9, 2020. (ECF No. 31).

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated Oct. 9, 2020 (ECF No. 32) ("Motion"). Petitioner requests $11,027.02 in fees and costs for the work of one attorney, Mr. Scott W. Rooney, and a paralegal. Motion at 2. Respondent opposed the fees request on October 20, 2020. *See* Response, dated Oct. 20, 2020 (ECF No. 34) ("Response"). Respondent contends that Petitioner has failed to establish a reasonable basis for the claim, and is thus not entitled to a discretionary fees award. *Id.* at 6-7. Petitioner reacted to Respondent's objection on December 18, 2020. *See* Reply, dated Dec. 18, 2020 (ECF No. 35) ("Reply").

For the reasons set forth below, I hereby **GRANT** Petitioner's motion, awarding fees and costs in the total amount of **$11,027.02**.

## ANALYSIS

I.   **Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1).[3] I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020).

In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim* itself—counsel's conduct in prosecuting the claim is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the

---

[3] Of course, special masters may *still* deny a fees award in an unsuccessful case even where reasonable basis is established – but reasonable basis *must* be established to qualify for an award in the first place.

preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

This case was dismissed before Petitioner had filed an expert report in favor of the claim, and the determination to seek dismissal seems to reflect an acknowledgment that it would not succeed. Respondent argues, however, that there was *never* objective evidence for support of the claim. Response at 5.

In so doing, Respondent observes that while the Petition states that D.F. was complaining of ear pain and crying after the vaccinations at issue, the record does not reflect or corroborate these allegations. Response at 5-6. Petitioner alleges that D.F. was initially seen in October 2017, for example, but the medical records from Midwest Health Center do not corroborate the contention. *Id.* at 6; Ex. 3; Petition at 1; Ex. 1. In fact, medical records from Midwest Health Center do not document concerns over D.F.'s hearing or speech prior to *October 2018*—almost twenty months post-vaccination. *Id.* at 6; *see* Ex. 3. The intervening visits that D.F. had during that time, moreover, were about dermatological complaints and a cold, and say nothing about hearing issues. Ex. 3 at 4-12; Ex. 4 at 2-3; Ex. 5 at 8-18. And the earliest that the record suggests onset could have occurred was in January 2018, a whole year after vaccination. Response at 6; Ex. 6 at 108. Otherwise, none of D.F.'s treating physicians pointed to the vaccine as the cause of any hearing issues, and the record does not support that conclusion. Response at 6. Thus, without any medical records or medical opinion to support the claim, Respondent maintains that it cannot be said to have possessed reasonable basis. *Id.* at 7.

In reaction, Petitioner maintains that the claim did in fact possess a reasonable basis, relying on D.F.'s medical history and a distinction between his pre-vaccination history and the symptoms witnesses observed after. Reply at 2. In addition, while records from D.F.'s well care visits do not record complaints of hearing problems, he was still an infant in the relevant time period, making it challenging for treaters or family members to assess whether a problem existed. *Id.* Indeed, D.F.'s hearing and speech loss issues appear to have been progressive in nature, unfolding over time. Reply at 2-3. According to the medical history D.F. was developing in a

---

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

normal manner until two years of age, at which time his parents noted hearing concerns that could well have begun long before but were difficult to ascertain. Ex. 5 at 36. And in one examination, D.F.'s physician even noted that it was unclear *when exactly* the hearing decline likely began. Ex. 6 at 173. To bulwark the reasonableness of a theory that a vaccine could cause hearing loss, Petitioner has also filed additional literature that supports complaints of sudden hearing loss post-vaccination (noting as well that this kind of claim has been asserted in the Program on other occasions). Reply at 3; Ex. 7; Ex. 8; Ex. 9; Ex. 10.

Respondent has raised reasonable objections to the claim's viability to which I would have given great weight—had the matter been litigated to a decision. In particular, a lack of medical records supports a reasonable timeframe for onset after vaccination. The fact that Petitioner seemingly incorrectly put forth the date of October 2017 as onset, when the record in question was from a year later, was also problematic. However, it is not self-evident that even an onset of hearing loss one year post-vaccination would be a failed claim from the outset—especially given the light standard applied to questions of reasonable basis. I also take note of the fact that there are prior cases in the Program that have found sudden hearing loss to be compensable (although they may equally suggest that future cases involving a lengthy onset should not be maintained). *See,* e.g., *Madigan v. Sec'y of Health & Hum. Servs.*, No. 14-1187V, 2021 WL 3046614 (Fed. Cl. Spec. Mstr. June 25, 2021) (deciding that petitioner was entitled to compensation for sudden sensorineural hearing loss after receiving the influenza vaccine; symptoms began three to four days post-vaccination).

At bottom, however, reasonable basis ultimately requires a finding that *some* facts exist that could support the claim, regardless of how other similar cases have been treated. And I find herein those facts are present, if faintly so. A case may well be likely to fail, but that does not mean (for purposes of awarding fees) that *no* evidence supports it. Here, D.F.'s hearing issues are documented. Ex. 5 at 37. And Petitioner and others have alleged an onset closer in time to vaccination that the record does not make impossible to accept. Thus, even if the timeline was likely to be found too remote to show that the vaccine likely caused D.F.'s sudden hearing loss, this does not mean the case was facially untenable from the start.

Another relevant factor supporting reasonable basis is D.F.'s young age. The record establishes no evidence of hearing problems prior to the vaccination, Ex. 5 at 37. And he was developing normally until about two years of age. *Id.* However, the records from an October 19, 2018 visit, note that Petitioner began voicing hearing concerns, stating D.F. "[s]eems to watch their faces. Using more gestures," along with concerns about his speech that could reflect a loss of hearing ability. *Id.* And the overall vagueness of such record proof means that witness affidavits and declarations could help fill in gaps or expand on topics not clearly otherwise established. To give but one example, Petitioner states that after the vaccination at issue she requested several times for a hearing screening to be performed, but doctors refused to do so. Ex. 1 at 2.

Accordingly, although it was prudent for Petitioner to dismiss the claim since it was not

likely to succeed, there was enough evidence underlying the claim to support its initial filing – and therefore reasonable basis existed for the matter sufficient to permit a fees award, given the easy-to-satisfy objective test that controlling precedent obligates me to apply.

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorney and a paralegal, based on the years work was performed:

| **Attorney** | **2019** | **2020** |
|---|---|---|
| **Mr. Scott Rooney, Esq.** | $380.00 | $380.00 |
| **Paralegal** | $60.00 | $60.00 |

ECF No. 32, Ex. 1.

Mr. Rooney practices in Farmington Hills, Michigan—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Jaffri v. Se'y of Health & Hum. Servs.*, No. 13-484V, 2016 WL 7319407, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). The rates requested for Mr. Rooney are also consistent with what has previously been

awarded for his time, and are in accordance with the Office of Special Masters' fee schedule.[5] *Pavan, next friend of J.P. v. Sec'y of Health & Hum. Servs.*, No. 14-60V, 2021 WL 1116403, at *2 (Fed. Cl. Spec. Mstr. Feb. 9, 2021). I thus find no cause to reduce them in this instance. I also deem the time devoted to the matter reasonable, and therefore award fees for all work performed on the case as requested in the fee's application.

### III.     Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $901.02 in costs incurred since the claim's filing, including medical record retrieval costs and filing fees. ECF No. 32, Ex. 1 at 8-9. Since the claim was dismissed so early, there were no expert costs accrued. Medical record retrieval costs are typical in Program cases and are thus eligible for reimbursement, and I do not find any of the requested costs in this matter unreasonable. Thus, they shall also be awarded in full without reduction.

### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioner's Motion for Attorney's Fees and Costs in its entirety, and award a total of **$11,027.02,** reflecting $10,126.00 in attorney's fees and $901.02 in costs, in the form of a check made jointly payable to Petitioners and their attorney Mr. Scott Rooney. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

---

[5] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran<br>
Brian H. Corcoran<br>
Chief Special Master